Okay. All right. Will the party step forward on this case, please? And give me a second. Good morning, Your Honor. Assistant State's Attorney Jenna McMahon on behalf of the people. Good morning. And I'm Maggie Heim on behalf of Mr. Smith. Will you spell your last name for me? H-E-I-M as in muffin. Okay. Because I'm a little hungry.  And I have with me Courtney Hoff and Daniel Kinsett, two students from DePaul Legal Clinic, who will be arguing the issues. Oh, wonderful. That's my alma mater. Oh, brilliant students. Everybody that graduated from DePaul is brilliant. That doesn't mean they necessarily win, but they have. Brilliant. All right. Again, you can go first. You have 15 minutes apiece. Are you going to reserve some time for rebuttal? Yes, we will reserve five minutes for rebuttal. Okay, great. And, of course, that doesn't amplify your voices. It just records what you say, so please keep your voices loud and clear. As you can see, one of us is missing. There's an empty seat. That's Justice Martin. He had a conflict today. He just could not be here. However, he will listen to the tapes. And for both sides, understand we have read the briefs. I have not completely read the records. I have to say that. And I have some questions about the record. But we will read the records. And shortly after the arguments, you should have a decision. All right. Thank you. Are you going to split the time? Oh, thank you. Justice Reyes asked, are the students going to split the time? Is that what you'd like to? And I don't mean students. Yes, I do mean students. They are planning to split the time. I'll be frank with you. We thought this was going to be a 20-minute argument. We'll give you 20 minutes. No problem. If the other side gets 20 minutes. I appreciate that. All right. That's great. Before I invite them up to argue, I do want to point out that in our opening brief, we include that Dela Cruz failed to include in the arrest report an original case incident, that he saw Smith make any movements, that that's incorrect. What came out during impeachment was that Dela Cruz did not include that Mr. Smith reached towards the bag. But there was mention of movements. So I didn't want that to be. Yeah, no. And that's the way I read it. Okay. Very good. That's the way I read the impeachment. All right. And when you step up, please identify yourselves again. Good morning, Your Honors. Good morning. And I'm going to ask you already. You hear how I am talking? Yeah. That's the way I want you to talk because we want to record what you say. And you want to be able to listen back to. Too easy, Your Honor. My name is Courtney Hawk, and I will be arguing the first issue on appeal, which is that Mr. Smith's conviction hinges on whether the state can prove the sufficiency of the evidence that he possessed a firearm that was tucked in a backpack that was in the vicinity where two other people that were also in the vehicle had access to reach. Constructive possession is knowledge and the power and intent to maintain control of the weapon. But there's no physical evidence tying Mr. Smith to the gun. I have a question regarding the record. The DVD that we received, there was no audio. It just said visual. Now the jury got to see the DVD. Did they hear audio as well as visual? We assume that they did hear audio, but the record that you have is the record that we also have. So there was one video that we could see with Delacruz where we can hear audio. And from that, we could kind of configure that Officer Dominguez's video was recording at the same time. So we see that as well. But officer's testimony is very crucial here, and that's why the video is so crucial as well. Because the officer's testimony was that Smith was moving up and down as they approached, and the fact that Mr. Smith was in the back seat next to the bag with three items in the backpack doesn't necessarily prove that Mr. Smith had knowledge or intent to control. But wasn't there items in the bag to identify that it was Mr. Smith's? Correct. And that connects him to the bag, but it doesn't necessarily connect him to the weapon. As Tate said, even if there's knowledge of something in the bag, there must be a relationship between the defendant and the contraband itself. In Tate's case, he was sitting at a dining table surrounded by drugs and scales and baggies, clearly indicative of somebody doing a drug possession case. But there was no proof tying him to the actual contraband, and in that case, he even fled the scene. Whereas here, Mr. Smith was the most cooperative individual in the vehicle. He rolled down the window while the other passengers were rolling up their windows. He gave his ID immediately. And the movement that Mr. Smith was seen to be doing has a very innocent explanation. And there must be something else tied with the movement related to the illegal conduct. And what was that explanation? Mr. Smith was seen on the phone less than nine seconds after Officer Dominguez came up to the side of the window. And Officer De La Cruz even admits this ambiguity and admits that it could be the phone when he says, I saw him making movements. I don't know if he was just moving to grab the phone. And at that moment, I don't know what he was moving to. And even though Officer Dominguez says that she was a little too short to see everything in the Tahoe, you can clearly see from her body-worn camera that he is on the phone immediately at that point. And in Randall as well, extremely meager when the evidence was also shown with movement and nervousness was not enough to establish probable cause. But as we know here today, our proof is not probable cause. It's beyond a reasonable doubt. And Mr. Smith wasn't nervous. He was immediately cooperative, as I said. And any movements must be considered in light that Mr. Smith was on his phone. Not that he was reaching down to conceal a weapon, not that he had touched the weapon. Or that he was reaching down initially to get the phone. That's one of my thoughts when I read this. It's very possible, Your Honor, especially for somebody in a situation being pulled over by a police officer to call their locked on. It's not unreasonable to believe that. But also we need to focus on that there was two other people in this car. And knowledge isn't necessarily a given. In Crumpton, the defendant didn't own the car itself, didn't own the gun itself. And there was no physical evidence, same as here, tying the defendant to the weapon. Instead, the state is focused on evidence of the defendant's connection to the backpack, but not necessarily to the gun. And what we want to prove here is that almost at the exact moment as Crumpton, seen in the dark, but we're seeing it in a larger vehicle, means that the officers even saw less of what the two other passengers in the front seat were doing. If we can't assume here that Mr. Smith was making criminal activity movements, then we have no idea what those two front seat passengers could have done, such as hide this weapon in a backpack that was easily accessible by those people as well. I have a question. So the motion to suppress was denied. The officers testified. There appears to be some contradiction in the officers' testimony. But it all went to the jury. The jury heard, and then they convicted the defendant. So can't we trust the process and trust that the jury considered everything when they rendered their decision in this case? Well, similar to Crumpton and Tate, there was a jury verdict, and it was proven as guilty. But the jury in this case also sent two very material questions. Did Mr. Smith own the gun or say that he owned the gun? And did Mr. Smith say that he owned the backpack? Two of those things, that gap in intent and control, are completely missing from this case. And while the jury may have come to a conclusion, we can't rely on the jury to adversely take the testimony, which we know is uncredible, uncooperated, and based off of people v. Smith in 1999, we can't offer that testimony as the truth of the matter. We have to look at the objective evidence in this case, which is the body-worn camera footage, which does not show any circumstantial evidence to prove that Mr. Smith was directly tied with this weapon. There's no relationship. And from that, there's no reason to discount, as I said, anyone within reach of this bag. The officers could not see what the driver and the front seat passenger were doing. They both tried to roll up their windows, and the driver refused to give up her ID. Meanwhile, in the back seat, Mr. Smith rolled down the window right away, offered up his ID, was quiet while the police officers did their investigation, and answered immediately when asked if that was his bag, which it was not, not including the fact that the driver at that time stated that she lived in the vehicle, and the other passenger stated that he owned several other items in that car. There was exclusive control for the driver to leave with the car and everything inside of it. There was no proof that Mr. Smith was directly tied to that contraband. And if this Court takes anything from my argument today, I hope it's this, that mere proximity does not equal possession. And as shown in Tate, where a jury verdict was overturned, there must be a relationship between the defendant himself and the contraband. But here, we just have presence and a possible connection to a backpack through three items, but there's no evidence that him, rather than the two other people in the car that were more suspicious than Mr. Smith himself, could have placed that gun in the bag. And he wasn't nervous. He was entirely cooperative. And his movements, as I said, are explained by him on the phone. So, if we take this case and we boil it down, Mr. Smith was not doing any illegal movement to even sufficient probable cause, let alone proof beyond a reasonable doubt. If Your Honors have no further questions. I have one question. What was the front seat passenger doing? The front seat passenger was talking over the driver during most of the altercation between Officer Dela Cruz and the driver. He also rolled down the window, but then rolled it back up. And while he was taken out of the vehicle, he was arrested and put behind the vehicle for safety purposes. And he was arguing with the alleged officers on the scene about not going through his bag and what they could go through. And then after that point, it was tunnel vision. They focused completely on Mr. Smith and they disregarded the passenger at all. And I have one other question. I thought I read that there were four officers on the scene. Did two other officers come during the search? When we looked at the video evidence, we actually pointed out ten officers. So, there was originally four officers on the scene. Initially. Initially, correct. So, there's two officers that do the initial traffic stop and then they immediately call for backup for two other officers that were around the corner. Very typical in that area. I know that area. The four officers, do you know if they were, can you tell from the video whether they were there when the search occurred? Yes, it seems that nobody left when the search occurred until after they had pulled Mr. Smith into the vehicle and formally arrested him. There's no indication that any of the people left. In fact, when we look at the video footage, we can see three other officers going through the car during the search, including Officer De La Cruz and Officer Dominguez. I was, and I'm going to look back at the tape, but I was wondering because I didn't hear that much of an argument for officer safety if you've got that many officers there. It's really not an issue. Okay. Of course, Your Honor, and my former classmate, he's graduating soon, is going to be talking about officer safety and how that wasn't a viable option. I don't know who somebody was, but I'm going to save the questions for him. All right. Thank you. I haven't looked for the questions. No further questions. Thank you very much. Thank you very much. Good morning, Your Honors. Counsel, and may it please the Court. My name is Daniel Kinstead, and I'll be arguing the second issue on appeal. This Court should reverse Mr. Smith's conviction outright because the unlawfully obtained gun and ammunition presented at trial violated Mr. Smith's Fourth Amendment rights. Now, as Your Honor was asking my classmate about, the body-worn camera shows within the first minute of the stop that there are four officers on the scene, two officers from the vehicle in front of the Tahoe, and then Officer Dominguez and Officer de la Cruz behind the Tahoe. Officer de la Cruz and Dominguez are the two that initially approached the vehicle, but within three minutes of the stop starting, there are four police cruisers and at least ten officers on scene surrounding the Chevy Tahoe. Now, Officer de la Cruz and Dominguez conducted a traffic stop of the Chevy Tahoe due to clear traffic violations. There was no front license plate and a crack greater than six inches on the front windshield. And then quickly into the stop of the SUV, the officers learned that the plates of the Tahoe didn't match the SUV's description, and that gave them the right to make sure that the driver of the Tahoe was legitimately driving the vehicle. But it does not give Officer de la Cruz the right to search the black book bag found in the back passenger area of the Tahoe. The officers went beyond the scope of their search, and they did not have probable cause based on a reasonable inference from specific articulable facts to search that black book bag. Well, let me ask you this. It wasn't just the license plates, right? But it was also the fact that the car had obvious bullet holes, the back window had a plastic bag covering the back of the vehicle as well, right? So it wasn't just initially because the plates didn't come up to the vehicle. Well, Your Honor, it— My point is this wasn't just a normal riding vehicle on the street. There was something that appeared to be a little bit off. Right, Your Honor, but it's unclear how the bullet holes rise to the level of danger. The bullet holes, there was no shot spotter calls, there was no tips that there had been a shooting or a bank robbery or anything that would suggest that there was firearm violence within that area. And the actual state of the Tahoe suggests that even if that car had been in some sort of firearm violence, it was at a previous time. The back window was taped with the garbage bag and the vehicle— You all keep saying—both of you are saying the back window, but it's not the back window. It's the driver's side. Correct, Your Honor. The rear window. Allow me to clarify. It is the rear driver's side window, not the trunk window in the very back of the vehicle, however. It's that last third window on the driver's side. And that's what I meant. And so that window had been previously taped up. It did not appear that that vehicle had just fled a shooting. It did not appear that the occupants of the vehicle had just stolen the car. And Officer De La Cruz's search steps actually provide an informative understanding of the suspicion that he had. So after he does get the driver out of the vehicle, the driver is afraid of reaching for her ID and states that her driver's license is going to be found in the well area underneath the radio on the front console of the Tahoe. Officer De La Cruz pulls out an ID, but it's not technically the driver's driver's license, but it does provide an indication that the driver is who she says she is, as well as a crucially intimate document, which is the driver's daughter's Social Security card. Those two items in conjunction with the contention by the driver that her license is in that front area should have quelled Officer De La Cruz's suspicion that the car was stolen or that the mismatched plates led to some sort of other crime or violence. Now, Officer De La Cruz stated in the suppression hearing that he saw Mr. Smith make sudden movements towards the floorboard of the vehicle, and that's what gave him reason to search the car. But as stated in People v. Randall, there must be some other guilty significance, either specific information known to the officer or by suspicious circumstances. Officer De La Cruz searched the vehicle because he was trying to find proof of ownership. After he finds those two documents, he moves to the other side of the Tahoe and says, I don't know what he has in this bag. He's not talking about the driver. He's not talking about the front passenger. He knows that or is assuming that that black bag is Mr. Smith's bag. And so to search that bag for proof of ownership of the vehicle is impossible. It's not a reasonable inference for the officer to have made when he was conducting the search. He skips the glove box. He skips the center console. He goes straight to that bag and then opens it. He doesn't ask the driver, hey, is this your black bag? Am I going to find registration or your license in there? He already – I want to interrupt you for just one second.  Did you say that they found the female driver's identification prior to going into the bag? Yes, Your Honor. So the officer found an identifying card as well as the driver's daughter's Social Security card prior to opening the bag. Can I ask a question? Was this a random stop or were the officers on alert to be looking for particular vehicles that evening? So, Your Honor, this was a random stop. The officers testified at the suppression hearing that they were conducting a different stop and they saw the Chevy Tahoe drive by. Specifically, Officer Taylor Cruz, in his testimony, focuses on the missing front license plate and the cracked windshield. Now, the Chevy Tahoe had Texas license plates, so not having the front license plate alone is not the issue, but it's the cracked window, the fact that there is an obstruction on the front windshield, that is a traffic violation that allowed them to stop the car to either provide a citation or to investigate further that specific traffic infraction. The officer also suggests at the suppression hearing that he had spotted narcotics, but there is an inconsistency and ambiguity in the officer's testimony about when he found those narcotics. He testifies that he did not smell any raw or burnt cannabis, he didn't discover any drugs, and he makes no mention of the residue that he alleges that he found in the arrest report or the case incident report. And additionally, neither the trial court nor the state use that observation of residue in the vehicle to suggest that the search was lawful. They don't bring it up in the suppression hearing at all, and it's not brought up at trial either. There is a motion to eliminate a trial to prevent it. There is a motion to eliminate, to prevent it. However, the state does not rely on it to get probable cause to search the vehicle. And so with the fact that the narcotics don't rise to the level of reasonable suspicion and the only person or the only entity to even bring up the bullet holes is the trial judge, the only thing that the officers had at the time of the stop was the sudden movements. And again, those alone are not sufficient. Nor is officer safety a concern for a protective sweep. This case is unlike People v. Sorensen where the officer felt threatened. He even testified that he felt threatened. He was alone on a dark road facing three suspects. And again, here there were four officers to start the search or to start the traffic stop, and then there were 10 officers surrounding the vehicle when the search began. So any concern about a protective sweep is, additionally, is not a sufficient basis to search that black book bag in the back of the vehicle. Do Your Honors have any other questions? If not, we're done. Thank you. Thank you very much. Mr. Smith respectfully requests that this Court reverse his conviction outright for either the State's failure to prove Mr. Smith guilty beyond a reasonable doubt or alternatively because presenting the gun and ammunition evidence at trial violated Mr. Smith's Fourth Amendment rights. Well, let me ask you this. So if the suspension motion is reversed, what happens? If the suppression motion is reversed, the State will not be able to present sufficient evidence to find Mr. Smith. Everything is out. Everything is out. The case would be dismissed, which is why we are asking for reversal outright if this Court finds that the motion to suppress should have been granted. Thank you.  Thank you. Good morning, Your Honors. Good morning. Good morning, Counsel. Assistant State's Attorney, Jonathan McMahon, on behalf of the people. May it please the Court. Before we start, let me ask you the same question about the DVD. What we received, there was no audio, and that was the same DVD that I understand the jury saw. So did that contain audio or did it not? I believe it did contain audio, but I also had the same situation as Counsel. So you have the same DVD that we have? Yes. Okay. Well, one of the – you guys are 7-11, right? Correct. One of them said that you could hear something, I think, on Dominguez's recording. Could you hear anything on her recording? I could not. You could not. Okay. The evidence when construed in light most favorable to the people proved beyond a reasonable doubt that the defendant knowingly possessed a firearm after having been convicted of two or more qualifying felony offenses and was guilty of armed habitual criminal. There is strong circumstantial evidence showing – Can I just stop you? Yes. Rather than doing the reasonable doubt argument, I'd like you to start with the motion to suppress evidence, because if we suppress it, we don't get to –  Okay. Not a problem. Okay. The trial court properly denied defendant's motion to suppress evidence, and this court should affirm. The officers had probable cause to search the vehicle because the plates were fictitious. The driver was unable to provide a driver's license, insurance, or any proof of  The scope of the search extends to every part of the vehicle, including closed containers, regardless if it's the passengers, as long as it could reasonably contain evidence related to the fictitious plates. What happens at the point in time where they at least feel content that they identified the owner of the vehicle? Doesn't the stop stop there? I mean, why did they continue on from that point on? They did not find the defendant's driver's license identification until – The drivers. The drivers. The drivers, yes. Sorry, excuse me. They didn't find that until the end of the search, and the officer did conclude his search once he found that driver's license. So there's a little issue between the facts from what counsel is saying and what we are saying. So you're saying the driver's license was not found until after the search? Yes. The drivers? Correct. So the officers were entirely justified to search the bag because the bag was located in the car on the floorboard just behind the center console, which is arm length distance from the driver. The bag can easily contain evidence such as registration, insurance, or title bearing either the driver's name or potentially another individual's. Additionally, officers did see defendant make repeatedly suspicious movements toward the bag, which would suggest that something was being concealed. And again, such as evidence indicating the vehicle was stolen. Maybe the insurance paper would have bearing someone else's name. Can I ask a question? So there appeared to be some difference between the officers in terms of when they saw the movement, what kind of movement they saw with regards to the stop in terms of the individual in the back of the car. How do you reconcile that? Both officers did see the defendant making fervent movements toward the floorboard, which is where the bag and the firearm was recovered. What I mean is that, you know, one of the officers always saw it when we were passing the vehicle or before we were getting out of the vehicle. They saw some movement, which I kind of wondered because part of the windows in the back were blocked by that black plastic, right? And so how were they able to see? And I guess that did come out during the trial. There was some question about women, where did they see this movement in the back? Yes. So defense counsel actually extensively crossed the officer on their ability to observe the defendant. And both officers testified that the windows were not fully tinted. Both officers testified that their observations were facilitated by the aid of their flashlights, the police spotlights, the streetlights, and the vehicle lights. Also, when you're viewing the body camera footage, you can tell that this is a well-lit, busier street. And you can see through the tinted windows when the flashlight was directed at them. So the officers definitely had an opportunity to observe the defendant and would be able to see these fervent movements. What about the issue that came up during the trial about Dominguez's body camera? It seemed to be going off and coming back on. So hers wasn't as detailed as Dela Cruz's. Correct. Officer Dominguez testified that it was malfunctioning. And when she realized it was not working properly, she did follow Chicago police directives. So going back to the motion to suppress, I'd also like to clarify something, too, in counsel's brief. The defendant is misrepresenting Officer Dela Cruz's testimony to argue without basis that the officer was not searching for evidence related to the fictitious plates inside the bag. To set the record straight, Officer Dela Cruz testified that the bag had nothing to do with the initial traffic stop because the vehicle was not pulled over for the fictitious plates. The vehicle was pulled over or the fictitious plates was discovered in the course of the traffic stop. Therefore, Officer Dela Cruz's testimony does not lend any credence to defendant's argument. Furthermore, there is nothing in the record to suggest that Officer Dela Cruz was not searching for evidence related to the fictitious plates. In fact, Officer Dela Cruz's actions show otherwise. After Officer Dela Cruz But is that what he testified at trial? Didn't he say it was because of the plate bullet holes and the cracked windshield? That was the reason for the traffic stop. And then they went to approach the driver, asked for a driver's license, insurance. He could not produce it. The officer then got the defendant's plus the other occupant's ID, then goes back to the squad car. I'm sorry. That was the question that was in my head and maybe you can answer it. I realized that the female driver was uncooperative, correct, because she didn't give her ID initially. And they went and got the ID from the two men. Did they get the ID from the two men and leave the men in the car and go and check and come back and then get them out? That was an issue for me. Yes. So they got the IDs from the two men. They went back to the squad car. They ran the plates through the lead system. You can see this on the body camera footage. Discovered that the plates were fictitious and then had everyone exit the vehicle to proceed with the search. And the reason why I ask that, and it just, as I was thinking about this, if I saw someone leaning toward the floorboard as I'm coming from the rear, which is the testimony that they have the flashlights and they can see through the rear window, not a side window, but that rear window that's not covered, just tinted, they can see the movement. And then they go up to the driver's side and the passenger's side and look through and see him making more movements. It's really hard for me to conceive of somebody just asking for their driver's license if I'm afraid because they've moved, not to get them out of the car immediately, but to leave them in the car when they're leaning forward, when he's leaning forward. You understand what I'm saying? Yes, I do. It just goes, the fear of them or officer safety just goes out of the window for me. If I were a cop and I saw somebody leaning forward, the first thing I'm going to do is get them out of the car. Then ask for their ID, not ask for their ID, leave them in the car with the bag and let them come back. That's why I wanted to make that clear in my head. Which would show that the officer was searching for evidence related to the fictitious plates, not for a gun or officer safety. Okay, then the plate, if it's the fictitious plate. Once they run their ID and they come back, they take them out and handcuff them before they search. Is that correct? Yes, correct. And also before they search. And why do they handcuff them? I'm not trying to give you a hard time. I'm running this through my head on what the law says to get there. Yes, while they were conducting their search, the officers were allowed to detain the occupants to conduct their search. Before Officer Dela Cruz began to search the car, he again asked the driver for her name. She would not provide it and she remained unwilling to give any form of identification. Officer Dela Cruz began his search with the dashboard council, which is a reasonable place to find proof of ownership. You can see in the dash or in the body camera footage that he grabs a stack of cards and he's going through the cards. And when he finds an ID, he asks the driver if it belonged to her and she said that's not the ID. When he found a social security card, he again asked the driver if it belonged to her and she said it was her daughter's. These questions reinforced the officer's intent to find proof of ownership. After the dashboard council did not produce any evidence related to the fictitious place, Officer Dela Cruz reasonably proceeded to search the bag. Again, this is reasonable because it's located in the car on the floorboard just behind the center council. It's an arm length distance from the driver. The bag can easily contain evidence such as registration, insurance, or title. So just to stop you for one second, the search of the bag took place after the search of the council? Yes. The officer searched the dashboard council first, grabs a stack of IDs or cards, goes through them, is asking the driver if any of these belong to her. No, no, no. Then he proceeds to search the bag, which is an arm length distance from the driver. A bag is a reasonable place to contain such documents, a reasonable place to have your driver's license. Was there any inquiry at that point in time as to who the owner of the bag was? I mean, did Officer Dela Cruz ask who does this bag belong to? No, he did not, but the officer is not required to ask who the bag belonged to. And, again, a bag, this is not like a pill bottle, which would be an example of an unreasonable place to search for documents. A bag is a reasonable place to search for documents. After the officer discovered the firearm, he continued to search the car, and that's because he was looking for proof of ownership rather than a gun. The officer concluded his search once he found the driver's identification, which confirmed the officer's objective of finding proof of ownership. As for defendant's credibility arguments, these are really just minor inconsistencies and goes to the weight of the evidence. And this court should defer to the trial court who heard and saw the officer's testimony, viewed the body camera footage, resolved any inconsistencies, and found the officer to be credible. The trial court properly denied defendant's motion to suppress evidence. If Your Honors do not have any further questions on the first issue, well, the second issue, I can go to the first. There was a certain question that I asked the counsels over here about the jury with regards to they heard all the evidence. There appeared to be contradictions between the officers. They went to the jury, and they found the defendant guilty. And they raised the issue about the jury had some questions that appeared to have gone unresolved. And from what I understand, at the time when they were asking questions, there were one down on which way they were going, or there was one that went one way or another. Yes, it was 11 to 1. Yeah. The trial court properly instructed the jury. The trial court sent back, you've heard all the evidence in this case. Please continue to deliberate, which is exactly what the jury did. They deliberated. They looked at the evidence, and they found the defendant guilty. I don't have any questions, no. Okay. Thank you, Your Honors. So going back to the first issue, the first strong circumstantial evidence showing the bag and its content belonged to the defendant. Inside the bag was a loaded gun along with only defendant's personal belongings, which included a United States government and energy work identification card displaying defendant's photo and name, a letter from the Illinois Department of Revenue addressed to the defendant, a bank statement addressed to the defendant, a U.S. government and energy work hat, and a vest. These are highly identifiable personal items. We also have defendant's statement to Officer Dominguez where he said he just got out of work. This statement further corroborates his control over the bag since it contained his work ID, a work hat, and a vest. A reasonable trier of fact could infer defendant's, that this was defendant's bag, and he had knowledge and exclusive control over the gun. Now for the Bailey factors. Bailey factor, one, the visibility of the contraband from defendant's position. A reasonable trier of fact could infer defendant had an opportunity to observe the firearm because, again, there is strong circumstantial evidence showing this was his bag. And because of his actions of touching and reaching toward the bag, which was partially unzipped. Both officers, again, observed the defendant repeatedly making sudden movements toward the floorboard, which is exactly where the bag containing the gun was recovered. And Officer Dela Cruz additionally testified while he was at the driver's window. He saw, he noticed the defendant had something in his hand, was reaching toward the center console, and reaching toward the bag on the floorboard, which was situated next to his leg. It was physically touching his leg. Which brings us to Bailey factor number three. Based on all these gestures, coupled with Officer Dela Cruz's testimony, that it appeared defendant was trying to conceal something. A reasonable trier of fact could infer defendant knew about the gun and was attempting to hide it. Bailey factor number four, this is a .40 caliber semi-automatic Glock 22. It is a larger handgun with a five-inch barrel. A reasonable trier of fact could infer defendant was aware of the presence of the gun in his bag. As for Bailey factor number two, the period of time defendant had an opportunity to observe the gun. This is less relevant here, especially since there's strong circumstantial evidence showing the bag belonged to the defendant. Additional circumstantial evidence showing defendant's knowledge and control, we have defendant's proximity. Again, the bag containing the gun is directly next to the defendant. It's literally touching his leg. We also have the fact that the defendant was the only person in the back seat and was the only person seen touching and reaching the bag. Based on the totality of the circumstances, a rational trier of fact could reasonably find the defendant knowingly possessed that loaded firearm. As for defendant's purported credibility arguments, again, these were minor inconsistencies. It goes to the weight of the evidence. And this Court should defer to the jury who heard and saw the officers testify, viewed the body camera footage, resolved any conflicts in the evidence, and ultimately found the officers to be credible. Therefore, the evidence, when viewed in light, most favorable to the people, proved that the defendant knowingly possessed the firearm and was guilty of armed individual criminal beyond a reasonable doubt. Unless Your Honors have for these reasons and those stated in our brief, we would ask this Honorable Court to affirm. Do we know, did Officer De La Cruz ask anybody in the vehicle if the weapon belonged to them? He did not. He did ask whose bag it belonged to, and no one claimed the bag. The defendant actually said it was not his. Thank you very much. Thank you. Thank you. Rebuttal. So, Your Honors, there were a couple of clarifications, and then two points on rebuttal unless there's something specific you'd like me to respond to. I really want to know when the ID was found, but I'm going to go back and look at the record. So, Your Honor, I'll clarify that point first. There is an ID that is found with the driver's legal name on it, but the driver tells Officer Dominguez, this is not, that's not my driver's license. He then finds the Social Security card. Based off of the body-worn camera footage, it appears that after Officer De La Cruz has searched the black bag, the green bag, the front glove box, and then moves to the center console, is when he finds the driver's actual driver's license. That's from the defense's perspective. That's when. So, what was the sequence again? So, the sequence goes, he goes to the front of the vehicle, and the driver says, you can find my ID on the front dash in the well. He takes out a stack of IDs, finds an ID that has the driver's legal name, the driver's daughter's Social Security card. He then moves around to the other side of the vehicle, opens the front right passenger door, and immediately grabs the black bag. He then goes through the black bag, finds the firearm. He goes through a green. Wait a minute. I'm sorry. He opens the front side, I mean the passenger side door. The front passenger right door. There is, Officer Dela Cruz states in the body-worn camera footage, that is a secondary clarification, is that at the suppression hearing and at trial, People's Exhibit 1, which is excerpts of Dela Cruz's body-worn camera footage, does have audio. And the second clarification is that officer, by classmates' suggestion that Officer Dominguez can be heard on audio, is through Officer Dela Cruz's body cam footage, not through hers. Sorry, can I just clarify? People's Exhibit 1, 10, and 11 are the excerpts of the people playing at trial, and we do not have audio for them, but the entirety of Dela Cruz's body-worn camera was also used as an exhibit at suppression, and that does have audio and should be in the record. Thank you. So to return to the steps of the search, Officer Dela Cruz states that he can't open the driver's side second door, the driver's side passenger door, so on the left side of the vehicle, that second door that somebody could get into the backseat behind the driver. With that black thing over the window. That is the rear driver's side. So the Chevy Tahoe has three windows on each side. Okay, and just two doors. And just two doors. It's built on a truck chassis, but it's technically a sports utility vehicle. So Officer Dela Cruz can't get through that back door, but he already wants to get to that black bag. And while counsel has suggested that Officer Dela Cruz didn't know whose bag it was or that there could have been identifying information in that black bag, he already believed and made the assumption that it was. No, by he, you mean Dela Cruz. Dela Cruz already made the assumption that it was Mr. Smith's bag, not that it was the driver's, not that he was going to find registration or a driver's license, because as he's going around to the other side of the vehicle to open the front passenger door, he's saying, I don't know. Officer Dela Cruz is saying to another officer, I don't know what he, meaning Mr. Smith, has in that bag. He doesn't want to find, Officer Dela Cruz does not want to find the registration. He's not looking for the license. Officer Dela Cruz just wants to open that bag. He doesn't sort of substantiate that assumption. Well, Your Honor, it comes from the reasonable inference that Officer Dela Cruz saw the sudden movements, which alone is not sufficient to search the bag. But his comment, Officer Dela Cruz's commentary to the other officers that he doesn't know what he, meaning Mr. Smith, has in that bag indicates that Officer Dela Cruz wants to open that bag and search that bag for essentially a hunch. He doesn't have reasonable suspicion that there's a firearm. He testified that there was no plain view firearms. He did not view Mr. Smith making any criminal activity. He did not find even the residue of cannabis until after he had already searched that black bag. The only thing Officer Dela Cruz had at that time was the sudden movements. And to Your Honor's point, the stop steps also suggest that an officer's safety concern doesn't exist. The officers, Officer Dela Cruz, seeing Mr. Smith make that sudden movement in the bag, if he was concerned for safety, the first step is going to be to secure the scene. He's going to get everybody out to make sure that nobody can grab the weapon. The People v. Krieg looks, gestures, and movements taken alone are insufficient to constitute probable cause to search since the movements might be innocent. For officers pulling up on your vehicle at 47th and Michigan at 8.50 p.m. in November, the individuals in the car are going to be concerned. They're not going to know what's going on or what's happening. It's four officers who are getting out and then two officers coming up to the car with flashlights and a spotlight on their vehicle pointed at the Tahoe trying to conduct their stop. But the other two officers didn't participate in the search. No, Your Honor. Well, Your Honor, the initial stop, the only two officers, for the initial traffic violations, the only two officers that conducted the conversations with the occupants of the vehicle were Officer Dela Cruz and Dominguez. I stated initially that quickly into the search they realized that the plates were mismatched. But Officer Dela Cruz did not realize that the plates were mismatched until technically after he had gotten the passenger's driver's license and Mr. Smith's driver's license, took them back to his vehicle and ran them through the lead system. It's at that time that he gets the notification that the plates don't match the Chevy Tahoe, that the Texas plates match, I believe, it was a Ford. And so it's at that time that Officer Dela Cruz says you can get everybody out and the unknown passenger and Mr. Smith get out of the vehicle as asked. It takes the driver longer to get out of the vehicle, but even by the time that the driver is out of the vehicle, Mr. Smith and the unknown passenger are behind the Tahoe in handcuffs. The other clarification that we'd like to make is that counsel is saying that the officers didn't know on that, the point that the officers didn't know whose bag the black bag was, that, again, if the officers were concerned for safety or if the officers were concerned about finding other contraband or proof of other criminal activity, they would not have allowed the driver to calm down, they would not have allowed the driver to negotiate with the driver to get out of the vehicle when the other two individuals were already out of the Tahoe in handcuffs. Unless, unless Your Honors have any further questions. Thank you. Thank you very much. Mr. Smith respectfully requests that you reverse, that this court reverse his conviction outright for either the reasonable, either the state's failure to prove beyond a reasonable doubt or by the presentation of the unlawfully obtained content and image. Thank you very much. Thank you. Thank you very much. All right. It was an interesting, it is an interesting case, that's why we, we auraled it, I think we ought to aural more criminal cases so that we can give both sides that represent the state and the defense a chance. We argue more civil cases, but from today on we're going to, at least I'm going to argue more criminal cases. Thank you all so much. It was wonderful. I don't know if there's students here. Are there students here? No? Okay. I thought you, besides you two, I thought you, I thought you still might have been here to watch us. At the end of the semester. Oh, that's right. Oh, yeah. Oh, my God, that's true. Everybody's not in there right now. Thank you very much. We will have a decision shortly.